UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER SCHWEIN,

              Plaintiff,         CASE NO. 17-13288
                                          HON. DENISE PAGE HOOD
v.

BOARD OF EDUCATION of the
RIVERVIEW COMMUNITY
SCHOOL DISTRICT, et al.,

              Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [#17]

## I. BACKGROUND

### A. Procedural Background

On October 6, 2017, this action was brought by Plaintiff Jennifer Schwein ("Schwein") against the Board of Education of the Riverview Community School District (the "Riverview Board") and Riverview Community School District ("RCSD") (collectively, "Defendants"), alleging that, as applied to her, Section 1248 and Section 1249 of the Revised School Code (Mich. Comp. Laws §§ 380.1248 and 380.1249) violate the Contracts Clause of the U.S. Constitution and the Michigan Constitution, and was relied upon by Defendants in violating her contract rights under Michigan's Teacher Tenure Act ("TTA") (Mich. Comp. Laws § 38.91) (Count

1

I). Schwein also alleges that Defendants violated due process rights afforded to her under the TTA (Count II). (Doc # 1) On January 19, 2018, a Stipulated Order was entered allowing the Michigan Department of Attorney General (the "Michigan AG") to intervene as a Defendant. (Doc # 10) On March 20, 2018, Schwein filed an Amended Complaint adding claims against Defendants for Breach of Employment Contract (Count III), Improper Layoff (Count IV), and Failure to Recall or Rehire (Count V). (Doc # 14) Schwein seeks to be reinstated to her prior teaching position, injunctive and declaratory relief, and compensatory and punitive damages, among other things. (*Id.*)

This matter is before the Court on the Michigan AG's Motion to Dismiss Count I of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), filed on April 3, 2018. (Doc # 17) Schwein filed a response on May 15, 2018. (Doc # 21) The Michigan AG filed a Reply on June 1, 2018. (Doc # 22) The Michigan AG argues that Schwein's claim that Mich. Comp. Laws §§ 380.1248 and 380.1249 violate the Contracts Clause of the U.S Constitution and the Michigan Constitution (Count I) is improper, untimely, and barred by res judicata.

For the reasons that follow, the Michigan AG's Motion to Dismiss Count I is **GRANTED**.

**B. Factual Background**

Schwein, a fifty-one year old woman, was hired by the Riverview Board as a teacher in 2001. Schwein is certified to teach elementary education, all subjects K-5, and all subjects K-8 in a self-contained classroom, as well as early childhood education. Schwein's position with RCSD is part of a bargaining unit represented by the Riverview Education Association, MEA/NEA (hereinafter "Association"). Schwein taught Kindergarten during her time with RCSD. Schwein entered an individual employment contract with RCSD and the Riverview Board on August 14, 2001. After her four year probationary period, Schwein was granted tenure.

The Riverview Community School District's rubric for evaluating teachers sets forth categories for which teachers are given individual numeric scores. The numeric scores are then totaled and combined with additional scores for "average student attendance," "personal growth rating," "classroom observation rating," and "student assessment data." The combined score ranges from 0–100, which is divided into the following designations: a score from 0–69 is considered "Ineffective;" a score form 70–79 is considered "Minimally Effective;" a score from 80–89 is considered "Effective;" and 90–100 is considered "Highly Effective."

Schwein obtained scores that were "Effective" (or "satisfactory" under the prior RCSD evaluation system) or higher for every RCSD evaluation she received for teaching her Kindergarten class. Schwein alleges that "Effective" was the

highest designation achieved within RCSD because the Superintendent instructed the Principals in RCSD to not give "Highly Effective" ratings. Schwein received an "Effective" performance evaluation from RCSD at the end of the 2014–2015 school year, with an individual score of 86.7 for teaching her Kindergarten class. Schwein alleges that there were several teachers employed by the Riverview Board who were given lower numeric evaluation scores than her, and several of those teachers taught in positions that Schwein is certified to hold.

On July 1, 2015, RCSD Superintendent Russell Pickell ("Pickell") sent Schwein a letter informing her that she would be laid off effective that day due to "the District's budget, staff performance, and the needs of its students." Schwein alleges that only one of the teachers that received a lower evaluation than Schwein was also laid off. The teachers that were not laid off continued to be actively employed by the Riverview Board.

On or about August 6, 2015, Pickell and the members of the Riverview Board were notified by teacher Susan Mesler ("Mesler") that she would be on leave from the District until at least January 2016. Schwein is certified to teach the full-time teaching position Mesler held. Schwein was not recalled to teach Mesler's position.

On September 1, 2015, Pickell sent Schwein an email entitled "Part Time position," in which he offered to recall her to a "part time specials schedule" for the elementary schools. The part time position equated to a seventy-percent

4

Kindergarten teaching position. Pickell also offered Schwein "the RTI slots," or Response to Intervention, which was to equate to a thirty percent position. The RTI work would be paid at "the para[professional] hourly rate." That would have been a significant reduction in Schwein's salary.

Pickell stated that the position was offered only until Mesler returned from leave, at which time "we would reevaluate district needs and you would most likely be back on lay-off." Schwein responded to Pickell on September 2, 2015, asking questions about the positions, and requesting twenty-four hours to consider whether to accept the position. Pickell responded on the next morning, stating "I don't have 24 hours to give you," and requested that Schwein give him an answer by 9:00 a.m. on September 3, 2015. Schwein declined the position. The position that was offered to Schwein was filled by a new teacher on September 9, 2015. Neither Pickell nor the Riverview Board offered to recall Schwein into any other positions.

On November 3, 2015, Schwein exercised her right pursuant to the Bullard-Plawecki Employee Right to Know Act, MCL 423.505 and placed a rebuttal letter regarding a previously-issued disciplinary letter in her personnel RCSD employee file. The letter was emailed to Pickell. Within a week of Schwein's submission of her rebuttal letter, on or before November 3, 2015, Pickell terminated Schwein's access to RCSD's email system, or caused her access to be terminated. The email system is the venue through which employees are notified of open positions within

RCSD. When reminded of the fact that an employee on layoff status needed access to their email for this and other reasons, Pickell stated that the Association could provide Schwein with information regarding open positions within RCSD. On December 18, 2015, the Association filed a grievance over the termination of Schwein's access to RCSD email. In response to the grievance, Pickell emailed the Association leadership Merriam-Webster's definition of "employee." Later, it was determined that Mesler would not return from her leave. Schwein was not offered Mesler's full-time teaching position.

Prior to the beginning of the 2016–2017 school year, RCSD posted a vacant elementary technology position within RCSD that Schwein was certified to teach. The Association Grievance Chair, Aaron Robinson ("Robinson"), contacted Pickell to discuss the Association's position that the elementary technology teaching position should be given Schwein, who was still on layoff status. Pickell responded by stating that Schwein would not be recalled to the position, but that she could apply for the position. Pickell noted that he believed that Schwein might not be qualified for the position because it involved technology.

There was also a vacant 3rd grade teaching positon that could have been filled by Schwein, but the Pickell did not inform the Association about that position. Schwein applied for the vacant elementary technology teaching position. Schwein was never informed about the vacant 3rd grade teaching position.

6

After the interview for the elementary technology teaching position, Pickell, who did not sit in on Schwein's interview, told Robinson that he believed Schwein had been "coached" for the interview. Schwein was not placed in either of the two vacant positions. The Riverview Board hired a first year teacher to fill the elementary technology teaching position, and hired a female teacher who had never worked within RCSD to fill the 3rd grade teaching position. Schwein alleges that the woman is the sister of one of the RCSD administrators.

On or about September 30, 2016, Pickell attempted to have the Association sign a "Memo of Understanding" which states, "Jennifer Schwein has no rights to recall with the Riverview Community School District in regards to Michigan law and the Collective Bargaining Agreement." The "memo" lays out eight (8) bullet points of training Schwein would be required to take under the contract, and then states: "Upon completion of the named Professional Development, Jennifer Schwein will be eligible for placement in a district position within her certification." The "memo" also sets out additional requirements that Schwein would need to meet upon being placed in a teaching position, and concludes that "[f]ailure to comply with any of the conditions outlined in this agreement will result in termination of employment." The "Memo of Understanding" was not signed by the Association.

In or around June 2017, RCSD posted a vacant early elementary teacher position Schwein was certified to teach. On July 10, 2017, the Association informed

Pickell that Schwein should be recalled to the position. Pickell responded on July 10, 2017, refusing to recall Schwein to the position. Pickell did, however, invite Schwein to interview for any of the openings within RCSD. Schwein applied and was interviewed for the position, but was not offered the position. Schwein alleges that she had not received feedback from the interview.

Schwein continues to apply and interview for positions within RCSD. In September 2017, Schwein applied and interviewed for a fifth grade position at Forest Elementary School. Schwein was not offered the position. Also in fall of 2017, there was a third grade vacancy at Memorial Elementary School within RCSD. Schwein alleges that the position vacancy was never posted. Schwein was not offered the position. Schwein alleges that the position was offered to former paraprofessional Vanessa Rosecrans. To date, Schwein remains on layoff status with the Riverview Board.

In 2011, the Michigan Legislature amended the Revised School Code, Mich. Comp. Laws §§ 380.1, *et seq.*, by adding Mich. Comp. Laws §§ 380.1248 and 380.1249. These statutes were part of a package of laws that changed the way in which school boards and school districts made personnel decisions that resulted in teacher layoffs. Prior to 2011, layoffs and recall were proper subjects of collective bargaining, so the collective bargaining agreements controlled. Under the amendments, teacher layoff and recall are no longer subject to collective bargaining

8

but must be based instead on teacher effectiveness. See Mich. Comp. Laws §§ 380.1248 and 380.1249. The amendments did not affect any existing collective bargaining agreement. Mich. Comp. Laws §§ 380.1248(2) & 380.1249(4). The Michigan legislature also amended the TTA in 2011. Prior to 2011 amendments to the statute, layoff and recall were also governed by the TTA, which stated a minimum number of years that a school district must keep a tenured teacher on the list of teachers eligible for recall. Mich. Comp. Laws § 38.105 (repealed 2011). The relevant collective bargaining agreement ("CBA") terminated on August 31, 2011 and the TTA no longer governs the layoff and recall of teachers.

## II.   ANALYSIS

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). This type of motion tests the legal sufficiency of the plaintiff's complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). A court, however, need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (*quoting Gregory v. Shelby Cnty.*, 220 F.3d 443, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as

factual allegations will not suffice." *Edison v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

As the Supreme Court has explained, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level… ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see LULAC v. Bresdesen*, 500 F.3d 523, 527 (6th Cir. 2007). To survive dismissal, the plaintiff must offer sufficient factual allegations to make the asserted claim plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**A. Contracts Clause Claim**

The Federal Contracts Clause states, "No state shall . . . pass any . . . Law impairing the Obligations of Contracts." U.S. Const. art. II, § 10, cl. Similarly, the Michigan Contracts Clause states, "No . . . law impairing the obligation of contract shall be enacted." Const. 1963, art. I, § 10. The analysis that follows focuses on the U.S. Constitution, but applies equally to the Michigan Constitution. *See AFT Michigan v. State of Michigan*, 497 Mich. 197, 233 (2015) ("This Court has often interpreted these provisions coextensively, and because plaintiffs have not argued

that the Michigan Constitution affords additional protection, we will not seek to ascertain otherwise."). To state a Contracts Clause claim, "a plaintiff must demonstrate that a change in state law has operated as a substantial impairment of a contractual relationship." *Mascio v. Pub. Employees Ret. Sys. of Ohio*, 160 F.3d 310, 313 (6th Cir. 1998) (internal citations and quotations omitted). In assessing the validity of such a claim, a court must ask whether "(1) a contract exists, (2) [there was] a change in law impairs that contract, and (3) the impairment is substantial." *Id.* (citing *Linton v. Comm'r of Health & Environment,* 65 F.3d 508, 518 (6th Cir.1995)). If a contractual obligation has been substantially impaired by a subsequent change in law, the court must determine whether the adjustment of "the rights to the parties to the contractual relationship was reasonable and appropriate in the service of a legitimate and important public purpose." *Id.*

Defendant argues that in *Baumgartner v. Perry Pub. Sch.*, 309 Mich. App. 507, 510–11, 513–15 (2015), the Michigan Court of Appeals recognized that CBAs, and not Michigan state law, governed issues related to layoffs, teacher retention, and recall before 2011. Schwein argues that the TTA also governed layoff and recall rights, *Baumgartner* did not state that the TTA never governed teacher layoff and recall, and Schwein is not arguing that she had a contract right concerning layoff, only that her contract right is to "continuous employment." (Doc # 21, Pg. 25)

The Court agrees with Schwein. First, the issue in *Baumgartner* was whether the State Tenure Commission had jurisdiction over questions related to layoff and recall, not whether the TTA governed teacher layoff and recall. Second, *Baumgartner* is not relevant to determining whether Schwein's right to continuous employment has been impaired by Defendants' reliance on the state policies in question. Third, even if teacher layoff and recall were governed solely by the CBA, as the Michigan AG would have it, several articles in the CBA, including Article XVI, Section 5 entitled "Dismissals," state that the policies prescribed in the agreement shall be followed "in accordance with" the TTA. (see Doc # 17-2, art. XVI) The teacher personnel decisions were governed by the CBA and the TTA prior to 2011.

The Michigan AG is correct in asserting that constitutional prohibitions against impairing contract obligations do not prevent state legislatures from setting the legal parameters for future contracts. It is well settled that contracts existing at the time of a challenged law's passage are protected from contrary law. *Edwards v. Kearzey*, 96 U.S. 595, 603, 24 L. Ed. 793 (U.S. 1877) ("The inhibition of the Constitution is wholly prospective. The States may legislate as to contracts thereafter made, as they may see fit. It is only those in existence when the hostile law is passed that are protected from its effect."). The Michigan AG is also correct that § 1248 and § 1249 did not impair any right held by a teacher under any then-binding CBA.

*See* Mich. Comp. Laws § 380.1248(2); Mich. Comp. Laws § 380.1249(4). Those arguments, however, do not address Schwein's contention that her contract right to "continuous employment" arises directly under the TTA.

In response, the Michigan AG argues: (1) the TTA does not contain any contract-creating language; (2) Michigan courts interpret the TTA as a regulation, not a contract; (3) Schwein does not have right to prevent the Legislature from amending statutes; (4) Michigan courts have recognized that, before 2011, collective bargaining agreements were the sole source of contract rights concerning layoffs; and (5) even if Schwein establishes a contract right, Schwein has no claim under the Contracts Clause because the alleged contract right is a remedy for layoff violations. Schwein argues that the TTA creates a contract right, collective bargaining agreements were not the sole source of contract rights concerning layoffs and recalls, and the impairment of the contractual right in the TTA is not an alteration of a remedy.

### 1. *Whether the TTA Contains Contract-Creating Language*

The United States Supreme Court has "maintained that absent some clear indication that the legislature intends to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'" *Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 465–

66 (1985) (quoting *Dodge v. Bd. of Ed.*, 302 U.S. 74, 79 (1937)). In determining whether a state statue gives rise to a contractual relationship, "it is of first importance to examine the language of the statute." *Dodge*, 302, U.S. at 78. *See also Indiana ex rel. Anderson v. Brand*, 303 U.S. 97, 104 (1938) ("Where the claim is that the State's policy embodied in a statute is to bind its instrumentalities by contract, the cardinal inquiry is as to the terms of the statute supposed to create such a contract"). "If it provides for the execution of a written contract *on behalf of the state* the case for an obligation binding upon the state is clear." *Dodge*, 302 U.S., at 78 (emphasis added). Absent "an adequate expression of an actual intent" by the State to contract, courts should avoid construing a public regulation to also be "a private contract to which the State is a party." *Nat'l R.R. Passenger Corp.*, 470 U.S., at 467 (quoting *Wisconsin & Michigan R. Co. v. Powers,* 191 U.S. 379, 386–387 (1903)).

The Michigan AG argues that the TTA does not contain any language creating a contract binding the State to employ teachers continuously. In support of this position, the Michigan AG highlights three provisions to the TTA (§§ 38.83, 38.92, and 38.172) that specifically refer to teacher contracts and agreements with local school boards. In addition, the Michigan AG notes that the title of the TTA states that it is "AN ACT . . . to regulate discharges or demotions . . . ." Mich. Comp. Laws. Ch. 38, Act 4 Note. The Michigan AG contends that the aforementioned provisions and language within TTA indicates that the statute was meant to regulate

14

teachers' contracts with local school boards. In response, Schwein argues that teacher contracts are regulated by separate statutes, such as Mich. Comp. Laws § 380.1231, mandating individual employment contracts for teachers, and Mich. Comp. Laws § 423.201, *et seq.*, which regulates collective bargaining agreements for teachers.

Schwein also relies heavily on *Elliott v. Bd. of Sch. Trustees of Madison Consol. Schs.*, 876 F.3d 926, (7th Cir. 2017), arguing that this Court should follow the analysis applied by the Seventh Circuit in finding that the Indiana teacher tenure statute created a contract right for tenured teachers in addition to them having individual contracts. While Schwein is correct that the Indiana teacher tenure statue and the Michigan TTA are substantially similar in many respects, Schwein's argument is unpersuasive for several reasons.

The holding in *Elliott* is partially reliant upon the Supreme Court's decision in *Indiana ex rel. Anderson v. Brand*, 303 U.S. 95, 107 (1938). In *Anderson*, the Supreme Court held that the 1927 Indiana Teachers' Tenure Act contained language that indicated the Indiana Legislature intended to create contractually binding relationships with teachers employed by local school districts. *Id.* at 105–06. The *Anderson* Court noted that Section 1 of the Indiana Techers' Tenure Act expressly stated that after a teacher served under a teaching contract for five years, the teacher became a "permanent teacher" upon entering into another teaching contract with the

teaching district, that the new contract would continue for an indefinite period, and would be known as an "indefinite contract." *Id.* at 102. The Court also noted that the title of the Indiana statute was "couched in terms of contract. [Speaking] of the making and cancelling of indefinite contracts." *Id.* at 105. Finally, the Court relied on a number of Indiana Supreme Court cases establishing that Indiana's teacher tenure statute granted contract rights. *Id.* at 105–109.

This Court does not adopt the rationale applied by the Seventh Circuit in *Elliott* because (1) *Anderson* does not apply to Michigan's TTA, (2) the Michigan TTA does not contain language creating "indefinite contracts" between teachers and local school boards, and the language of the Michigan TTA does not evidence an express intention of granting tenured teachers a contract right. Michigan's TTA states that "a teacher on continuing tenure shall be employed continuously by the controlling board under which the probationary period has been completed and shall not be dismissed or demoted except as specified in this act." M.C.L. § 38.91(1). The Court agrees with the Michigan AG, and finds that the language of § 38.91 as a whole, and the title, evidences an intent for the TTA to serve as a regulation.

The Court finds that the Michigan TTA does not grant teachers a contract right. Schwein's Contracts Clause claim fails. Because Schwein has failed to state a claim under the Contracts Clause, the Michigan Department of Attorney General's Motion to Dismiss Count I is **GRANTED**.

### 2. *Michigan AG's Other Arguments*

Although the Court need not continue because Michigan's TTA does not expressly grant teachers a contract right, the Court notes that (1) Michigan Supreme Court law has never held that the TTA creates a binding contract right for teachers nor has it held that the TTA is exclusively a regulation; (2) Schwein does not have a right to prevent the Michigan Legislature from amending the TTA; (3) as stated above, the TTA did partially govern layoffs prior to 2011; (4) the Michigan AG's argument for modification of a remedy is not relevant to Schwein's claim and the claim is not barred by the statute of limitations.

## B. Res Judicata

The Court agrees with Schwein that Count I is not barred by res judicata.

## III. CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Intervening Defendant the Michigan Department of Attorney General's Motion to Dismiss Count I of Plaintiff Jennifer Schwein's Amended Complaint (Doc # 17) is **GRANTED**.

Count I of the Amended Complaint (Doc # 14) is **DISMISSED**.

                              S/Denise Page Hood
                              Denise Page Hood
                              Chief Judge, United States District Court

Dated: August 17, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 17, 2018, by electronic and/or ordinary mail.

                                      <u>S/LaShawn R. Saulsberry</u>
                                      Case Manager