## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JENNIFER SCHWEIN,

                Plaintiff,                CASE NO. 17-13288
                                              HON. DENISE PAGE HOOD

v.

BOARD OF EDUCATION OF
THE RIVERVIEW COMMUNITY
SCHOOL DISTRICT, *et al.*,

                Defendants.

_____/

### ORDER GRANTING IN PART AND DENYING IN PART
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#34]

## I.    BACKGROUND

### A. Procedural Background

On October 6, 2017, this action was brought by Plaintiff Jennifer Schwein ("Schwein") against the Board of Education of the Riverview Community School District (the "Riverview Board") and Riverview Community School District ("RCSD") (collectively, "Defendants"), alleging that, as applied to her, section 1248 and section 1249 of the Revised School Code ("RSC") (Mich. Comp. Laws §§ 380.1248 and 380.1249) violate the Contracts Clause of the U.S. Constitution and the Michigan Constitution, and was relied upon by Defendants in violating her contract rights under Michigan's Teacher Tenure Act ("TTA") (Mich. Comp. Laws

1

§ 38.91) (Count I).  Schwein also alleges that Defendants violated due process rights afforded to her under the TTA, now incorporated into the 2011 RSC (Count II).  [ECF No.38, Pg.ID 548] On January 19, 2018, a Stipulated Order was entered allowing the Michigan Department of Attorney General (the "Michigan AG") to intervene as a Defendant.  [ECF No. 10, Pg.ID 59] On March 20, 2018, Schwein filed an Amended Complaint adding claims against Defendants for Breach of Employment Contract (Count III), Improper Layoff (Count IV), and Failure to Recall or Rehire (Count V).  [ECF No. 14, Pg.ID 107] Schwein seeks to be reinstated to her prior teaching position, injunctive and declaratory relief, and compensatory and punitive damages, among other things.  [*Id.*]

On April 3, 2018, the Michigan AG filed a Motion to Dismiss Count I of the Amended Complaint.  [ECF No.17] The Michigan AG asserted that Schwein's claim that the RSC's sections 380.1248 and 380.1249 violate the Contracts Clause of the U.S Constitution and the Michigan Constitution (Count I) was improper, untimely, and barred by res judicata. [*Id.*] On August 17, 2018, this Court found that Schwein failed to state a claim under the Contracts Clause and granted the Michigan AG's Motion to Dismiss. [ECF No. 25, Pg.ID 393]

This matter is before the Court on Defendants' Motion for Summary Judgment on Counts II, III, IV, and V filed on June 10, 2019. [ECF No. 34]

Schwein filed a Response on July 8, 2019. [ECF No. 38] Defendants filed a Reply on July 22, 2019. [ECF No. 40]

**B.** Factual Background

Schwein, a fifty-one-year-old woman, was hired by RCSD as a teacher in 2001. [ECF No. 38, Pg.ID 536] Schwein is certified to teach elementary education, all subjects K-5, and all subjects K-8 in a self-contained classroom, as well as early childhood education. [*Id.*] Schwein taught kindergarten during her time with RCSD. [*Id.*] Schwein entered an individual employment contract with RCSD and the Riverview Board on August 14, 2001. [*Id.*] Schwein was considered a tenured teacher at the time of her layoff. [*Id.* at 535]

After fourteen years with RCSD, Schwein received her first and only disciplinary citation. [*Id.* at 537] While Defendants and Schwein disagree about the facts leading to the citation, Schwein was disciplined for allowing her child, a student at Memorial Elementary, to stay in her classroom after he returned from a field trip. [*Id.*] Principal Maxon recalls explicitly telling Schwein that her son should remain in the designated classroom with other students whose parents could not pick them up early. [*Id.*] Schwein does not recall Principal Maxon explicitly prohibiting her from hosting her son for the afternoon. [*Id.*]

RCSD's rubric for evaluating teachers sets forth categories for which teachers are given individual numeric scores. [*Id.* at 538] The numeric scores are

then totaled and combined with additional scores for "average student attendance," "personal growth rating," "classroom observation rating," and "student assessment data." [*Id.*]  The combined score ranges from 0–100, which is divided into the following designations: a score from 0–69 is considered "Ineffective;" a score form 70–79 is considered "Minimally Effective;" a score from 80–89 is considered "Effective;" and 90–100 is considered "Highly Effective."  [*Id.*]

Schwein obtained scores that were "Effective" (or "satisfactory" under the prior RCSD evaluation system) or higher for every RCSD evaluation she received for teaching her kindergarten class. [*Id.* at 536] Schwein received an "Effective" performance evaluation from RCSD at the end of the 2014–2015 school year, with an individual score of 86.7 for teaching her kindergarten class. [*Id.* at 538] Schwein alleges that there were several teachers employed by RCSD who were given lower numeric evaluation scores than her, and several of those teachers taught in positions that Schwein was certified to hold.  [*Id.* at 550]

On July 1, 2015, RCSD Superintendent Russell Pickell ("Pickell") sent Schwein a letter informing her that she would be laid off effective that day due to "the District's budget, staff performance, and the needs of its students." [*Id.* at 540] The District also laid off three other teachers across the district. [ECF No. 34, Pg.ID 426] RCSD retained two kindergarten teachers who originally received lower evaluation scores than Schwein. [ECF No. 38, Pg.ID 541] When asked why

teachers with lower base scores were retained, Pickell responded that RCSD implemented a scoring system that weighted each individual score to account for easier or more difficult evaluators. [ECF No. 34-7, Pg.ID 500] This system was meant to adjust for variation among different evaluators across the school district. [*Id.*] Scores at Huntington Elementary were increased by 1.22 points and the scores at Forest Elementary were decreased by 2.05 points. [ECF No. 40, Pg.ID 632] Results at Schwein's school, Memorial Elementary, were not adjusted. [*Id.*]

When selecting teachers to layoff, Pickell admitted that he granted more weight to the most recent evaluation score than previous ones. [ECF No. 34-7, Pg.ID 501] RCSD also retained one teacher, Ms. Hunter, with a lower evaluation score for her "experience teaching a grade level," which Pickell stated qualifies as "relevant special training." [ECF No. 38, Pg.ID 541]

On or about August 6, 2015, Pickell and the members of the Riverview Board were notified by teacher Susan Mesler ("Mesler") that she would be on leave from the District until at least January 2016. [ECF No. 38, Pg.ID 542] Schwein is certified to teach the full-time teaching position Mesler held. [*Id.*] Schwein was not recalled to fill Mesler's position.  [*Id.*]

On September 1, 2015, Pickell sent Schwein an email entitled "Part Time position," in which he offered to recall her to a "part time specials schedule" for the elementary schools. [*Id.*] The part time position equated to a seventy-percent

kindergarten teaching position. [*Id.*] Pickell also offered Schwein "the RTI slots," or Response to Intervention position, which would occupy thirty percent of her new position's time. [*Id.*] The RTI work would be paid at "the para[professional] hourly rate," which would have been a significant reduction in Schwein's salary. [*Id.*]

Pickell stated that the position would only be available until Mesler returned from leave. [*Id.*] Schwein responded to Pickell on September 2, 2015, asking questions about the position, and requesting twenty-four hours to consider whether to accept the position. [*Id.*] Pickell responded on the next morning, stating twenty-four hours would be unreasonable because students would be starting soon. [*Id.*] Students were not scheduled to begin until September 7, 2015. [*Id.*] Schwein declined the position. [*Id.*] When it was confirmed that Ms. Mesler would not be returning that year, Schwein was not recalled to that full-time teaching position. [*Id.*]

In November 2015, Schwein placed a rebuttal letter regarding her previously-issued disciplinary letter in her personnel RCSD employee file. [*Id.*] Within a month of Schwein's submission of her rebuttal letter, Pickell terminated Schwein's access to RCSD's email system, or caused her access to be terminated. [*Id.*] The email system is the venue through which employees are notified of open positions within RCSD. [*Id.*] When reminded of the fact that an employee on

layoff status needed access to their email for this and other reasons, Pickell stated that the union, the Riverview Education Association, could provide Schwein with information regarding open positions within RCSD. [*Id.*] Pickell asserted that email access is terminated for all district retirees and layoffs pursuant to the advice of counsel. [ECF No. 34-7, Pg.ID 507]

Prior to the beginning of both the 2016-2017 and 2017-2018 school years, Schwein interviewed for vacant teaching positions at RCSD, including a vacant kindergarten position. [*Id.* at 543] Notwithstanding her effectiveness ratings and qualifications, RCSD filled the positions with candidates who lacked Schwein's "effective evaluations, and 'special' training." [*Id.*]

During the 2016-2017 school year, RCSD posted a vacant elementary technology position within RCSD. [*Id.*] Schwein interviewed for the position but was not recalled. [*Id.*] There was also a vacant third-grade teaching position that could have been filled by Schwein, but Schwein was never informed about the vacant third-grade teaching position. [*Id.*]

During the 2017-2018 school year, RCSD posted several vacant positions including developmental kindergarten, second-grade, third-grade, and fifth-grade teaching positions. [ECF No. 543, Pg.ID 543] Schwein was qualified for all the available vacancies. Despite receiving previous "effective" evaluation ratings as a kindergarten teacher, Pickell admitted that RCSD "did not consider Ms. Schwein's

prior effective evaluations when determining whether to recall her to a position within the District." [*Id.*]

While waiting to be recalled, Schwein was employed as a long-term substitute teacher. [ECF No. 38, Pg.ID 543-44] During this period Schwein actively applied for work in other districts as well. [*Id.*] Schwein was recalled as a fourth-grade science and social studies teacher at Forest Elementary for the 2018-2019 school year. [*Id.* at 545]

**C.** Legal Background

In 2011, the Michigan Legislature amended the RSC, Mich. Comp. Laws §§ 380.1, *et seq.*, by adding Mich. Comp. Laws §§ 380.1248 and 380.1249. These statutes were part of a package of laws that changed the way in which school boards and school districts made personnel decisions that resulted in teacher layoffs. *Garden City Educ. Ass'n v. Sch. Dist. of City of Garden City*, 975 F. Supp. 2d 780, 783 (E.D. Mich. 2013).

Prior to the 2011 amendments, layoffs and recalls were proper subjects of collective bargaining, so the collective bargaining agreements controlled. *See Southfield Educ. Ass'n and Smith v. Bd. of Educ. of Southfield Pub. Sch.*(*Smith*), 909 N.W.2d 1, 10 (Mich. Ct. App. 2017), *appeal denied*, 908 N.W.2d 291 (Mich. 2018). The amendments did not affect any existing collective bargaining agreement. Mich. Comp. Laws §§ 380.1248(2) & 380.1249(4). The Michigan

8

legislature also amended the TTA in 2011.  Prior to the 2011 amendments to the statute, layoffs and recalls were also governed by the TTA, which stated a minimum number of years that a school district must keep a tenured teacher on the list of teachers eligible for recall.  Mich. Comp. Laws § 38.105 (repealed 2011); *see also Baumgartner v. Perry Pub. Sch.*, 872 N.W.2d 837, 850 (Mich. Ct. App. 2015) ("The 'general purpose' of the TTA no longer includes teacher layoffs, which are now governed by the Revised School Code.").

The RSC currently states that school districts must "adopt and implement . . . a rigorous, transparent, and fair performance evaluation system" to appropriately evaluate the effectiveness of every teacher on an annual basis. Mich. Comp. Laws § 1249. These evaluations serve as the foundation that all school administrators must use prior to selecting teachers for layoffs. The evaluations measure:

    i)    The effectiveness of teachers and school administrators, ensuring that they are given ample opportunities for improvement.

    ii)    Promotion, retention, and development of teachers and school administrators, including providing relevant coaching, Instruction support, or professional development.

    iii)    Whether to grant tenure or full certification, or both, to teachers and school administrators using rigorous standards and streamlined, transparent, and fair procedures.

    iv)    Removing ineffective tenured teachers and school administrators after they had ample opportunities to

> improve and ensuring that these decisions are made using rigorous standards and streamlined, transparent, and fair procedures.

Mich. Comp. Laws § 380.1249(1).

## II.   ANALYSIS

### A. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view admissible evidence in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and

on which that party will bear the burden of proof at trial.  In such a situation, there

can be "no genuine issue as to any material fact," since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders

all other facts immaterial.  *Celotex Corp.*, 477 U.S. at 322-23.  A court must look

to the substantive law to identify which facts are material.  *Anderson*, 477 U.S. at

248.

## B. Due Process

### 1.  Defining the Property Interest

Schwein alleges that Defendants' actions violated her right to due process in

both her property interest in continued employment and for a fair teacher

evaluation process. To establish a due process violation, the plaintiff must show

that (1) it has a life, liberty, or property interest protected by the Constitution; (2) it

was deprived of that interest by a state actor; and (3) it was not granted timely and

sufficient process under law. *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir.

2009). "Property interests are created and their dimensions are defined by existing

rules or understandings that stem from an independent source such as state law-

rules or understandings that secure certain benefits and that support claims of

entitlement to those benefits." *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595,

611 (6th Cir. 2006) (quoting *Bd. Of Regents of State Colls. v. Roth*, 408 U.S. 564,

577 (1972) (internal quotation marks omitted)). A person's claim must be more

than abstract. *Roth*, 408 U.S. at 577. A person's expectations of a proposed benefit must be legitimate and not merely "a unilateral expectation." *Id.*

When the government acts to deprive an individual of a property right, due process requires a "hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). A public employee who has achieved tenure through state law has a property interest as determined by state law. *Cleveland Bd. Of Educ. V. Loudermill*, 470 U.S. 532, 542 (1985). The Court must look to state law to determine the nature and extent of a property interest. *Id.* at 538-539.

The TTA no longer governs layoffs, which are now included in the RSC. *Id.* at 842. Michigan's TTA only mentions "discharge" and "demotion" and therefore, excludes layoffs. *Baumgartner*, 872 N.W.2d at 841. The 2011 amendments to the TTA removed "the slim statutory basis that the STC claimed" it had over layoff-related matters. *Id.* And statutory language does not include layoffs within the jurisdiction of the State Tenure Commission. *Id.*

Although the TTA does not grant teachers a property interest in continued employment or their teacher evaluations, at least one federal court has found that "[t]he effectiveness rating, once earned, is a property interest entitled to protection under the Due Process Clause." *Southfield Educ. Ass'n v. Bd. of Educ. of the*

*Southfield Pub. Sch.* (*Southfield*), No. 17-11259, 2018 WL 1509190, at *5 (E.D. Mich. March 27, 2018). And Michigan courts have found that the RSC transferred the property interest in continuous employment from the TTA when a layoff is not bona fide. *Smith*, 909 N.W.2d at 15. Relevant case law has construed bona fide to mean "in good faith." *Garden City Educ. Ass'n v. Sch. Dist. of City of Garden City*, 975 F. Supp. 2d 780, 790 (E.D. Mich. 2013) (quoting *Chester v. Harper Woods Sch. Dist.*, 273 N.W.2d 916, 920 (Mich. App. 1978)). Actions meant as "a subterfuge to avoid" a plaintiff's legal protections are not considered bona fide. *Id.*

To comply with the RSC, layoffs must be based on evaluation scores which determine a teacher's effectiveness. *Southfield*, 2018 WL 1509190, at *1. Effectiveness shall be determined by evaluating several different factors, including "student growth and assessment data," teacher performance measured by an "evaluation tool" that considers "evidence of student growth," a teacher's "demonstrated pedagogical skills," classroom management skills, and attendance and discipline records; classroom observation; and lesson plan review. Mich. Comp. Laws § 380.1249(2)(a)(i), (iv), (e) (citing Mich. Comp. Laws § 380.1248(1)(b)(i)-(iii)).

Teacher evaluations are supposed to be used by school districts in making "all personnel decisions" including layoffs and recalls. § 1248. Tenure and seniority are no longer primary factors and are only permissible to use in the case

of a tiebreaker. § 1248(1)(c). Evaluation scores are only "position specific" when the sought-after position is "substantially different" than the plaintiff's previous position. *Smith*, 909 N.W.2d at 11 (finding that a technology teacher was not entitled to recall over external candidate because the position was different than the one in which the teacher received a "highly effective" rating).

Under Michigan law, tenured teachers are not entitled to any due process protection from a bona fide layoff. *Chester*, 273 N.W.2d at 916. Teachers are only entitled to due process protection when a school district's process results in a layoff or recall that is not bona fide. *Smith*, 909 N.W.2d at 15.

### 2.  Teacher Evaluations are a Property Right

Schwein argues that she has a property interest in her teacher evaluations and continued employment. Schwein acknowledges that the TTA no longer grants a property interest in continued employment to tenured teachers but argues that a property interest in continued employment still exists when the layoffs are not bona fide. RCSD responds by asserting that its layoff decisions were bona fide, and there is no property right in a bona fide layoff.

Schwein argues that her layoff was not bona fide as applied in her case because RCSD did not base the layoff decisions on the evaluation scores. Schwein claims that she should not have been laid off prior to the other two kindergarten

teachers because she had a higher "raw" evaluation score. Schwein further argues
that weighting the evaluation scores after-the-fact violated the "transparency"
required by the RSC and illustrates that her layoff was merely a subterfuge to deny
her due process prior to terminating her. Schwein also argues that despite her
qualifications for the position, RCSD retained a third-grade teacher, Ms. Hunter,
with a lower evaluation score because she had "grade level experience" which
RCSD qualifies as "relevant special training." However, Schwein points out that
the RSC prohibits using length of service to determine layoffs except as a
tiebreaker. Schwein also contends that her property rights were violated when
RCSD continually hired new teachers for open positions and ignored her
"effective" evaluation scores for "substantially similar" positions for which she
applied.

Schwein's case is analogous to *Southfield*. In *Southfield*, two high schools
consolidated, which led to a reduction in the teacher workforce. 2018 WL
1509190, at *1. To obtain a job at the new school, the district required its existing
high school teachers to interview for positions at the new school. *Id.* The plaintiffs
in *Southfield* alleged that they were laid off despite their status as "effective"
teachers. *Id.* at *2. Ruling for the plaintiffs, the court found that the RSC required
the school district to base its staffing decisions "based on retaining effective
teachers." *Id.* at *5 (quoting the RSC).

15

Defendants argue that Schwein's use of *Southfield* is inappropriate and that her case is more analogous to *Smith*. RCSD asserts that its layoff decisions were based on budgetary concerns and declining enrollment. RCSD points to the three other laid off teachers as evidence that the layoffs were bona fide. Although three other teachers were laid off and the district may have experienced budgetary concerns that made the layoffs bona fide, Schwein asserts that the layoffs were not bona fide as applied to *her*.

Unlike in *Southfield*, Defendants argue that Schwein's effectiveness rating was considered when they laid Schwein off, and that Schwein has failed to identify that she was laid off at the expense of a "minimally effective" rated teacher. RCSD may not have laid off any lower rated teachers who held the same position as Schwein, but Schwein argues that other teachers in similar positions were retained with lower ratings. [ECF No. 34-8, Pg.ID 511] (Teacher Effectiveness Ratings). Notably, Schwein does not contest RCSD's right to conduct legitimate layoffs, but claims that RCSD's failure to use her previous evaluation score when conducting recalls violates § 1248.

RCSD counters that *Smith* established that there is no right to recall. This point is true. Nor is there a right to a specific effectiveness rating, inasmuch as the evaluation decisions, although guided by specific statutory criteria, necessarily are based on at least some subjective judgment. *See Richardson v. Twp. of Brady*, 218

F.3d 508, 517 (6th. 2000) (holding that an individual "can have no legitimate claim of entitlement to a discretionary decision").

However, Defendants fail to establish that *Southfield* is inapplicable. As in *Southfield*, once Schwein earned her effectiveness rating, it became a protectable property interest. Once Defendants disregarded Schwein's "preferred" status without advance notice and made hiring decisions without considering her previous score, Schwein was deprived of her property without due process. *Southfield* likened plaintiffs' effectiveness ratings to "a veteran's preference status" or "a rank on a promotion eligibility list" and opined that once teachers earn their ratings, the school district cannot deprive teachers of the benefits of their scores when making staffing decisions. *Id.* Although it appears that RCSD did not layoff teachers with lower ratings than Schwein, there is a question of material fact as to whether RCSD adequately considered Schwein's evaluation scores during the recall process.

As for Defendants comparison to *Smith*, the Court finds that *Smith* and the instant case are distinguishable. The plaintiff in Smith, Velma Smith ("Smith") was a tenured technology teacher who was laid off when her position was eliminated. *Smith*, 909 N.W.2d at 5. Smith had been rated "highly effective" in her position during the two years preceding her layoff, but not in any prior years. *Id.* After her layoff, Smith applied for a vacant part-time position. *Id.* But the district hired an

outside candidate. *Id.* Smith alleged that the district violated § 1248 and her due process rights by disregarding her "highly effective" rating and hiring an external candidate. *Id.* at 6. The court of appeals found that § 1248 required the school district to base recalls and new hires on effectiveness ratings after program reductions or layoffs. *Id.* at 11. Despite their finding, the court determined that the vacant position was different than Smith's previous position in which she received the "higher effective" rating. *Id.* The court then held that teacher ratings are "position specific," which meant that "Smith simply could not claim an effectiveness rating related to the available position, and the school district was therefore not required to consider whether she would be relatively more or less effective than any other candidate for the position." *Id.*

Comparing the instant matter with *Smith*, Defendants assert that the positions Schwein sought were in a different class than her previous position. RCSD claims that Schwein's rights could not have been violated because she was not entitled to any prescribed process for a position in a different class than her previous position and that it was permitted to use factors besides Schwein's evaluation score. Schwein, however, argues that her case is distinguishable from *Smith* because she is qualified to teach K-5 and that all the positions she applied for were similar enough to her previous position to justify using her prior "effective" evaluation.

RCSD argues that the Teachers' Tenure Commission ("the Commission") was the proper venue to adjudicate Schwein's claims. Schwein points out that in *Baumgartner*, the court found that the Commission does not have jurisdiction over the alleged due process violations. *Baumgartner*, 872 N.W.2d at 852 ("[T]he Legislature gave school boards the power to make layoff decisions, and gave the courts the sole and exclusive power to review the school boards' decisions.")

This Court finds that Schwein did have a property interest in her teacher evaluations that entitled her to a minimum amount of due process. RCSD acted contrary to their prescribed procedures. Once Schwein earned her effectiveness rating, RCSD was unable to deprive her of the benefits of that score by disregarding it when making staffing decisions, changing the hiring rules contrary to the RSC, without prior notice and an opportunity to be heard.

Schwein's assertions regarding the lack of transparency in the use of "weighted" scores, RCSD's failure to seriously consider her previous evaluation scores in subsequent interviews, and RCSD's decision to retain a third-grade teacher with a lower evaluation score create a genuine issue of material fact concerning whether Schwein's layoff was bona fide. Defendants' Motion for Summary Judgment on the due process violation claim is **DENIED**.

### A. Breach of Employment Contract

Schwein asserts that she has a contract right rooted in her 2001 employment contract, and that Defendants breached that right. Schwein contends that Defendants misunderstand her employment contract claim. Schwein argues that her employment contract from 2001 incorporated her rights under the TTA, which grants her a right to continuous employment. To support her argument, Schwein claims that it is uncontested that the TTA contains the right to "continuous employment." *See* Mich. Comp. Laws § 38.91. Schwein further argues that unlike in *Smith*, she has alleged a non-bona fide layoff, allowing her to assert her right to continuous employment under the TTA.

Defendants argue that this Court has already found that the TTA does not grant teachers a contract right. [ECF No. 25, Pg.ID 391] In that Opinion, this Court agreed with the Michigan AG and found that the language, the title and the statute as a whole, evidence an intent for the TTA to serve as a regulation. Defendants further assert that there were no other agreements negotiated between the parties that provided Schwein with the contract rights she claims to have been denied. Defendants indicate that Michigan's TTA does not contain language creating "indefinite contracts" between teachers and local school boards, and the language of the Michigan TTA does not evidence an express intention of granting tenured teachers a contract right. *Schwein v. Bd. of Educ. of Riverview Cmty. Sch. Dist.*, 335 F. Supp. 3d 964, 971 (E.D. Mich. 2018).

The Court disagrees with Schwein's claim that the TTA grants an "uncontested" right to continuous employment. In a previous Motion to Dismiss, the Michigan AG refuted that exact point, [ECF No. 25, Pg.ID 389] citing three provisions of the TTA that specifically refer to teacher contracts and agreements with local school boards. *See* Mich. Comp. Laws §§ 38.83, 38.92, and 38.172. The Court also relies on its previous finding that the language of § 38.91 does not evidence an express intention of granting tenured teachers a contract right. *See* Mich. Comp. Laws § 38.91(1) ("[A] teacher on continuing tenure shall be employed continuously by the controlling *board* . . . .") (emphasis added). Defendants' Motion for Summary Judgment on the breach of contract claim is **GRANTED**.

## B. Improper Layoff and Failure to Recall

In 2011, the Michigan Legislature instituted several changes governing the layoff and recall process. The goal of the 2011 RSC was to retain effective teachers. Teacher evaluations are supposed to be used by school districts in making "all personnel decisions" including layoffs and recalls. Schwein makes several arguments illustrating how Defendants' violated sections 1248 and 1249 of the RSC. One example that Schwein repeatedly references is Defendants' retention of lower rated teachers, many of whom taught positions that Schwein was certified and qualified to teach—positions that were substantially similar to her previous

one. [ECF No. 38, Pg.ID 550] Schwein also contests Defendants' disregard of her prior evaluation score during the recall process. [*Id.*]

Although the Court has found that RCSD's actions created a question of material fact as to whether RCSD conducted a bona fide layoff, the Court cannot grant Schwein relief on her improper layoff and failure to recall claims. State legislators clearly expressed in the TTA that a "teacher's sole and exclusive remedy" under § 1248 would be reinstatement. § 1248(1)(c)(3). Schwein was recalled by the district for the 2018-2019 school year, and currently serves as a fourth-grade science and social studies teacher. Defendants' Motion for Summary Judgment on the Improper Layoff and Failure to Recall claims is **GRANTED**.

## II.    CONCLUSION

For the reasons stated above,

IT IS SO ORDERED that Defendants' Motion for Summary Judgment [ECF

No. 34] **GRANTED** in Part and **DENIED** in Part.

IT IS FURTHER ORDERED that Defendants' Motion as it pertains to Plaintiff's Due Process claim is **DENIED**.

IT IS FURTHER ORDERED that Defendants' Motion as it pertains to Plaintiff's Employment Contract claim is **GRANTED**.

IT IS FURTHER ORDERED that Defendants' Motion as it pertains to

Plaintiff's Improper Layoff and Failure to Recall claims is **GRANTED**.

IT IS ORDERED.

s/Denise Page Hood
Chief Judge, United States District

DATED: May 31, 2020